IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NAVAJO REFINING COMPANY, L.P.<br><br>and<br><br>MONTANA REFINING COMPANY,<br>a Partnership,<br><br>Plaintiffs,<br>vs.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 02-1220C<br>(Judge Hewitt) |

**SECOND AMENDED COMPLAINT**

For their Second Amended Complaint, Plaintiffs, Navajo Refining Company, L.P., and Montana Refining Company, a Partnership, allege as follows:

**INTRODUCTION**

1. Plaintiffs entered a series of contracts with the United States government for the purchase of fuel.

2. The contracts contained a price adjustment clause that permitted the government to change the price it paid for fuel by as much as two hundred sixty percent of the contract price.

3. In *Barrett Refining Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit held that the government's price adjustment clause was illegal.

4. The government profited from its illegal price adjustment clause by materially underpaying Plaintiffs and then denied Plaintiffs' claims for relief.

5. Plaintiffs seek here to be made whole for the government's violation of the law.

**THE PARTIES**

6. Plaintiff Navajo Refining Company, L.P. ("Navajo Refining") is a Delaware limited partnership with its principal place of business in Artesia, New Mexico.

7. Plaintiff Montana Refining Company, a Partnership ("Montana Refining"), is a Montana general partnership with its principal place of business in Great Falls, Montana.

8. Both Navajo Refining and Montana Refining are subsidiaries of Holly Corporation. Navajo Refining and Montana Refining are referred to collectively as "Plaintiffs," except where individually identified.

9. Defendant is the United States acting, *inter alia*, through the Defense Energy Support Center ("DESC"). DESC is part of the Defense Logistics Agency, which is part of the Department of Defense. During part of the period at issue, DESC was known as the Defense Fuel Supply Center; however, Defendant is referred to as "DESC" throughout.

**JURISDICTION**

10. This Court has jurisdiction to entertain this action pursuant to 28 U.S.C. § 1491 (2002), 41 U.S.C. §§ 601-13 (2002), and U.S. Const. amend. V.

**STATEMENT OF THE CASE**

**I. THE CONTRACTS**

11. From at least 1980 to 1999, DESC was the largest purchaser of fuel in the United States and the sole purchaser and user of military grade fuels. During this period, DESC purchased over $90 billion of military fuel. By virtue of DESC's market position, DESC had substantial market power and substantial ability to affect the prices it paid for military fuels.

12. From 1982 to 1999, Plaintiffs and DESC entered a series of long-term contracts for the purchase of approximately $1.5 billion of military fuel. The contracts provided for the purchase of different types of military fuel at different locations in the United States.

13. Plaintiffs' contracts contained DESC's standard price adjustment clause. DESC's price adjustment clause permitted DESC to change the monthly price it paid Plaintiffs for fuel by as much as two hundred sixty percent of the contract price.

14. DESC has acknowledged at least two authorized purposes for its price adjustment clause: First, to protect DESC and Plaintiffs against market fluctuations, and, second, to ensure that the prices DESC paid Plaintiffs for military fuels under the long-term contracts reflected at least fair market value.

15. DESC's price adjustment clause permitted DESC to adjust the prices it paid Plaintiffs for fuel based on changes in price indexes published by the Department of Energy in the *Petroleum Marketing Monthly* (hereafter the "PMM Indexes") and other price indexes.

16. Contrary to the acknowledged purposes of DESC's price adjustment clause, the Department of Energy did not design or intend for the PMM Indexes and other price indexes to be used to set or adjust prices in response to market fluctuations, and the PMM Indexes and other price indexes did not reflect the market value for the military fuels DESC purchased.

17. As a result of DESC's use of the PMM Indexes and other price indexes in its price adjustment clause, DESC paid Plaintiffs prices for fuel that were materially below fair market value.

18. DESC used the PMM Indexes and other price indexes in its price adjustment clause in contravention of the acknowledged purposes of the clause, and despite knowing that the PMM Indexes and other price indexes were not designed to set or adjust prices in response to

market fluctuations, and despite knowing that the PMM Indexes and other price indexes did not reflect fair market value.

19. DESC also used other price indexes in its price adjustment clause to make price adjustments. On information and belief, DESC knew that some of the other price indexes it used to set or adjust prices were not appropriate for these purposes.

## II. DESC'S ILLEGAL PRICE ADJUSTMENT CLAUSE

20. DESC's price adjustment clause was illegal.

21. In *Barrett Refining Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001), the Federal Circuit held that the same price adjustment clause DESC used in Plaintiffs' contracts violated law and regulation because it did not base price adjustments on a supplier's own established prices or costs. Instead, DESC illegally based price adjustments on price indexes, such as the PMM Indexes, which resulted in prices that were materially below fair market value.

22. DESC violated the law knowingly.

23. DESC thus combined its substantial market power and substantial ability to affect the price of military fuel with a knowing violation of law and regulation to reduce the price it paid for fuel below fair market value.

24. DESC profited from violating the law by paying Plaintiffs materially less than fair market value for the fuel DESC purchased.

## III. PLAINTIFFS' CERTIFIED CLAIMS

25. Pursuant to the Contract Disputes Act, Plaintiffs submitted certified claims to DESC's contracting officer seeking relief from DESC's use of the PMM Indexes and other price indexes and its violation of law in awarding and administering Plaintiffs' contracts.

26. Navajo Refining submitted certified claims under the following contracts on the dates indicated:

| **Contract** | **Date Submitted** |
|---|---|
| DLA600-82-D-0636 | June 6, 2001 |
| DLA600-83-D-0592 | June 6, 2001 |
| DLA600-84-D-0533 | June 6, 2001 |
| DLA600-86-D-0459 | June 6, 2001 |
| DLA600-86-D-0856 | June 6, 2001 |
| DLA600-87-D-0574 | June 6, 2001 |
| DLA600-88-D-0582 | June 6, 2001 |
| DLA600-89-D-0578 | June 6, 2001 |
| DLA600-90-D-0528 | June 6, 2001 |
| DLA600-91-D-0559 | June 6, 2001 |
| DLA600-92-D-0570 | June 6, 2001 |
| DLA600-93-D-0503 | June 6, 2001 |
| DLA600-94-D-0517 | June 6, 2001 |
| SPO600-95-D-0500 | September 12, 2002 |
| SPO600-96-D-0493 | September 12, 2002 |
| SPO600-97-D-0496 | September 12, 2002 |
| SPO600-98-D-0487 | September 12, 2002 |
| SPO600-99-D-0520 | September 12, 2002 |

27. Montana Refining submitted certified claims under the following contracts on the dates indicated:

| **Contract** | **Date Submitted** |
| --- | --- |
| DLA600-86-D-0476 | May 29, 2001 |
| DLA600-86-D-0855 | May 29, 2001 |
| DLA600-87-D-0573 | May 29, 2001 |
| DLA600-88-D-0585 | May 29, 2001 |
| DLA600-89-D-0579 | May 29, 2001 |
| DLA600-90-D-0529 | May 29, 2001 |
| DLA600-91-D-0560 | May 29, 2001 |
| DLA600-92-D-0528 | May 29, 2001 |
| DLA600-93-D-0555 | May 29, 2001 |
| DLA600-94-D-0516 | May 29, 2001 |
| SPO600-95-D-0466 | September 12, 2002 |
| SPO600-96-D-0525 | September 12, 2002 |
| SPO600-97-D-0497 | September 12, 2002 |
| SPO600-98-D-0488 | September 12, 2002 |
| SPO600-99-D-0521 | September 12, 2002 |
| DLA600-84-D-0551 | September 15, 2003 |

## IV. DESC'S FINAL DECISIONS

28. On November 1, 2001, November 8, 2002, and November 17, 2003, DESC's contracting officer issued final decisions denying all of Plaintiffs' claims. DESC's two November 1, 2001 final decisions separately denied the thirteen claims Navajo Refining submitted on June 6, 2001, and the ten claims Montana Refining submitted on May 29, 2001. DESC's two November 8, 2002 final decisions separately denied the five claims Navajo Refining submitted on September 12, 2002, and the five claims Montana Refining submitted on September 12, 2002. DESC's November 17, 2003 final decision denied the claim Montana Refining submitted on September 15, 2003.

29. Despite having determined the price of fuel illegally, DESC asserted in its final decisions that it had paid Plaintiffs *exactly* fair market value for the fuel Plaintiffs' supplied under the long-term contracts. DESC denied that Plaintiffs were entitled to any recovery and denied all of Plaintiffs' claims.

30. In the November 1, 2001 final decisions, DESC alternatively asserted that it was entitled to "re-price" the contracts subject to that decision and to recover $8,073,114 from Plaintiffs.

31. Pursuant to the Contract Disputes Act, Plaintiffs hereby timely file suit upon and appeal the entirety of DESC's November 1, 2001, November 8, 2002, and November 17, 2003 final decisions.

**COUNT I**
**(Illegality)**

32. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 31, above.

33. DESC knowingly awarded and administered each of Plaintiffs' contracts in violation of law and regulation, *inter alia*, by basing price adjustments on price indexes, such as the PMM Indexes and other price indexes, that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

34. DESC's violation of law and regulation in awarding and administering Plaintiffs' contracts damaged Plaintiffs.

35. Plaintiffs are entitled to recover based on the fair market value of the fuel they delivered to DESC in an amount of at least $298,516,607.06, plus interest, by way of reformation, *quantum valebant*, or rescission and restitution.

**COUNT II**
**(Misrepresentation)**

36. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 35, above.

37. DESC knowingly awarded and administered Plaintiffs' contracts in violation of law and regulation.

38. DESC knowingly based price adjustments on the PMM Indexes and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

39. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose its violation of law and regulation.

40. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose that the PMM Indexes and other price indexes were not designed or intended to be used to set or adjust prices.

41. Plaintiffs reasonably relied upon DESC's material and/or fraudulent misrepresentations as an inducement to enter the contracts.

42. DESC's material and/or fraudulent misrepresentations damaged Plaintiffs.

43. Plaintiffs are entitled to recover based on the fair market value of the fuel they delivered to DESC in an amount of at least $298,516,607.06, plus interest, by way of rescission and restitution, damages, or reformation.

**COUNT III**
**(Breach of Contract)**

44. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 43, above.

45. DESC's compliance with law and regulation in awarding and administering the contracts was a material condition of the contracts upon which Plaintiffs reasonably relied in entering the contracts.

46. DESC's basing price adjustments on standards that were designed or intended to be used to set or adjust prices was a material condition of the contracts upon which Plaintiffs reasonably relied in entering the contracts.

47. In contravention of DESC's contractual obligations, DESC violated law and regulation in awarding and administering the contracts.

48. In contravention of DESC's contractual obligations, DESC based price adjustments on standards such as the PMM Indexes and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

49. DESC's violation of law and regulation in awarding and administering the contracts constituted breach of contract.

50. DESC's use of the PMM Indexes and other price indexes to set or adjust prices under the contracts constituted breach of contract.

51. DESC's breach of contract damaged Plaintiffs.

52. Plaintiffs are entitled to recover based on the fair market value of the fuel they delivered to DESC in an amount of at least $298,516,607.06, plus interest, by way of rescission and restitution, or damages.

**COUNT IV**
**(Implied-In-Fact Contract)**

53. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 52, above.

54. DESC knowingly awarded and administered each of Plaintiffs' contracts in violation of law and regulation.

55. DESC's violation of law and regulation in awarding and administering Plaintiffs' contracts rendered at least the price terms of Plaintiffs' contracts invalid and unenforceable.

56. DESC's violation of law and regulation in awarding and administering Plaintiffs' contracts damaged Plaintiffs.

57. At least the pricing terms of Plaintiffs' contracts are replaced by an implied-in-fact contract to pay the fair market value of the fuel Plaintiffs delivered to DESC.

58. Plaintiffs are entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $298,516,607.06, plus interest, by way of an implied-in-fact contract and/or *quantum valebant*.

**COUNT V**
**(Failure of Consideration And Frustration of Purpose)**

59. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 58, above.

60. DESC's compliance with law and regulation in awarding and administering the contracts was a material part of the consideration upon which Plaintiffs reasonably relied in entering the contracts and a material purpose of the contracts.

61. DESC's basing price adjustments on standards that were designed or intended to be used to set or adjust prices was a material part of the consideration upon which Plaintiffs reasonably relied in entering the contracts and a material purpose of the contracts.

62. DESC violated law and regulation in awarding and administering the contracts.

63. DESC based price adjustments on the PMM Indexes and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

64. DESC's violation of law and regulation in awarding and administering the contracts constituted a failure of consideration and frustrated the purpose of the contracts.

65. DESC's use of the PMM Indexes and other price indexes that were not designed or intended to be used to set or adjust prices constituted a failure of consideration and frustrated the purpose of the contracts.

66. This failure of consideration and frustration of the purpose of the contracts damaged Plaintiffs.

67. Plaintiffs are entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $298,516,607.06, plus interest, by way of rescission and restitution.

**COUNT VI**
**(Mistake)**

68. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 67, above.

69. Plaintiffs entered and performed the contracts with the intent that they comply with law and regulation. This was a material condition upon which Plaintiffs reasonably relied in entering the contracts.

70. Plaintiffs entered and performed the contracts with the intent that the standards used to make price adjustments were designed or intended to be used to set or adjust prices. This was a material condition upon which Plaintiffs reasonably relied in entering the contracts.

71. DESC did not comply with law and regulation in awarding and administering the contracts.

72. DESC based price adjustments on the PMM Indexes and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

73. If DESC did not knowingly award and administer contracts in violation of law and regulation, as alleged above, then DESC must be presumed to have intended to award and administer contracts in accordance with law and regulation.

74. If DESC did not know that the PMM Indexes and other price indexes were not designed or intended to be used to set or adjust prices, as alleged above, then DESC must be

presumed to have used the PMM Indexes and other price indexes with the intent that they were designed or intended to be used to set or adjust prices.

75. As the result of a mistake relating to DESC's compliance with law and regulation, DESC and Plaintiffs entered and performed contracts in violation of law and regulation.

76. As a result of a mistake, DESC and Plaintiffs entered and performed contracts using the PMM and other price indexes to set or adjust prices.

77. If DESC and Plaintiffs had not been mistaken, DESC and Plaintiffs would not have entered and performed contracts in violation of law and regulation.

78. If DESC and Plaintiffs had not been mistaken, DESC and Plaintiffs would not have entered and performed contracts using the PMM Indexes and other price indexes to set or adjust prices.

79. Alternatively, if DESC was not mistaken in awarding and administering contracts in violation of law and regulation, then DESC knew or should have known of Plaintiffs' mistake and failed to meet its duty timely to disclose this mistake to Plaintiffs.

80. If DESC was not mistaken in awarding and performing contracts using the PMM Indexes and other price indexes to set or adjust prices, then DESC knew or should have known of Plaintiffs' mistake and failed to meet its duty timely to disclose this mistake to Plaintiffs.

81. The parties' mutual mistake and/or DESC's failure to disclose Plaintiffs' unilateral mistake damaged Plaintiffs.

82. Plaintiffs are entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $298,516,607.06, plus interest, by way of reformation, or rescission and restitution.

**COUNT VII**
**(Taking)**

83. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 82, above.

84. Plaintiffs have property rights in and in relation to the fuel they delivered to DESC. In addition, Plaintiffs have property rights in relation to DESC's procurement of the fuel Plaintiffs delivered.

85. With no fully supporting claim of right, DESC took possession of and infringed upon Plaintiffs' property rights in and in relation to the fuel they delivered.

86. DESC's taking of Plaintiffs' property was for a public purpose.

87. To the extent that DESC's taking of Plaintiffs' property was effected in conjunction with a violation of law and regulation, DESC acted within the general scope of its authority to procure the fuel.

88. DESC effected a taking of Plaintiffs' property within the meaning of the Fifth Amendment of the United States Constitution.

89. DESC has not paid Plaintiffs just compensation for the taking of Plaintiffs' property.

90. DESC's failure to pay Plaintiffs just compensation for the taking of their property violated the Fifth Amendment of the United States Constitution and thereby damaged Plaintiffs.

91. Plaintiffs are entitled to recover just compensation in an amount of at least $298,516,607.06, plus interest from the time of the taking.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment as follows:

92. $298,516,607.06, plus interest, or such further amount as established prior to judgment;

93. Denial of DESC's re-pricing claims;

94. Such other and further relief, including attorney fees, as the Court may deem just and equitable.

Respectfully submitted,

s/ J. Keith Burt

J. Keith Burt
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3208 (Phone)
(202) 263-5208 (Fax)

Attorneys for Plaintiffs
Navajo Refining Company, L.P. and
Montana Refining Company, a Partnership

*Of Counsel:*

Adrian L. Steel, Jr.
William C. Paxton
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006

W. John Glancy
Holly Corporation
100 Crescent Court
Dallas, TX 75201-6427

September 20, 2004